```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
```
FRANK H. FINKEL, JOSEPH A. FERRARA, SR.,
MARC HERBST, THOMAS N. PIALI,
DENISE RICHARDSON, GARY LA BARBARA,
THOMAS GESUALDI, LOUIS BISIGNANO,
DOMINICK MARROCCO and
ANTHONY PIROZZI, as Trustees and Fiduciaries
of the Local 282 Pension Trust Fund,

       Plaintiff(s),    **REPORT AND**
                **RECOMMENDATION**
   -against-        CV08-4598 (SJF) (WDW)

FRED TODINO & SONS, INC.,
        Defendant(s).
```
------------------------------------------------------------X
```
**WILLIAM D. WALL, United States Magistrate Judge:**

  Before the court on referral from District Judge Feuerstein is the plaintiff's unopposed motion for summary judgment. DE[18]. For the reasons set forth herein, I recommend that the motion be granted and that the plaintiffs be awarded $245,036 in withdrawal liability payment; $118,543.72 in accrued interest from July 1, 2007 through April 1, 2010; daily interest of $120.84 from April 1, 2010 through entry of judgment; post-judgment interest pursuant to 28 U.S.C. §1961; liquidated damages in the amount of $118,543.72, plus $120.84 per day until entry of judgment; attorneys' fees in the amount of $18, 960.95;and costs in the amount of $881.16.

## BACKGROUND

  This is an action to collect withdrawal liability from defendant Fred Todino & Sons, Inc., ("Todino") pursuant to ERISA, as amended by the Multiemployer Pension Plan Amendments Act of 1980, 29 U.S.C. §1381 *et seq.* ("MPPAA"). The following facts are set forth in the plaintiffs' Rule 56.1 Statement and are supported by evidentiary references. Plaintiffs are or

were fiduciaries of the Local 282 Pension Trust Fund ("the Fund") within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A). The Fund is an employee benefit and multi-employer plan under ERISA, jointly administered by a Board of Trustees and governed by a Restated Agreement and Declaration of Trust (the "Trust Agreement"). *See* Rule 56.1 Stmt., ¶¶1-3 and evidentiary citations therein. The defendant, Todino, signed a series of collective bargaining agreements ("CBAs") with Local 282 that required it to make contributions to the Fund. The last month in which Todino reported that it performed work for which contributions were due to the Fund was September 2005. *Id.* ¶4. The CBA incorporates the Trust Agreement by reference and renders both the employer and the union parties to the Trust Agreement. Todino is an "employer" under ERISA. *Id*. ¶¶5&6, Maye Decl. Ex. B.

The Trustees determined that Todino permanently ceased all covered operations under the Fund and its contribution obligation to the Fund in September 2005, thereby withdrawing from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C.§1383(a) and Article XI, Section 2 of the Trust Agreement. The Fund hired the Segal Company to calculate Todino's withdrawal liability, which was determined to be $245,036. *See* Maye Decl., Ex C. The Fund notified Todino of this liability by letter dated June 11, 2007 and provided a schedule for withdrawal liability payments. Id. ¶¶7-9, Notice & Demand Letter, Maye Decl., Ex. D. Pursuant to section 4219(c) of ERISA, 29 U.S.C.§1399(c), and as provided in the Notice and Demand letter, Todino was required to make 41 monthly withdrawal liability payments of $6,449.01, with the final payment in the amount of $5,228.61. The first payment was due on or before July 1, 2007. Todino has not made any withdrawal payments. *Id.* ¶¶10 & 11.

By letter dated June 18, 2007, Todino's lawyer, Scott Markowitz, disputed the Trustee's

2

determination that Todino had withdrawn and asked the Trustees to reconsider their assessment of withdrawal liability. *Id.* ¶12. Todino took the position that it had not withdrawn because it was "actively attempting to obtain new work and when it obtains new jobs, it will recommence making contributions to the fund." *See* Maye Decl., Ex. E. On or about July 2, 2007, the Fund notified Todino that it had failed to make the first withdrawal payment and that if payment was not made within sixty days, Todino would be in default pursuant to 29 U.S.C. §1399(c)(5. 56.1 Stmt., ¶13, "Notice of Default," aye Decl., Ex. F.

Mr. Markowitz responded for Todino by letter dated July 17, 2007, reiterating Todino's claim that it had not withdrawn. *Id.* ¶14, Maye Decl., Ex. G. By letter dated August 16, 2007, Fund counsel Elizabeth O'Leary notified Todino's attorney that the Trustees had considered and rejected Todino's request that withdrawal liability be waived because of Todino's stated intention to resume contributions to the Fund if business improved. *Id.*, ¶15 & 19, Hock Decl., Ex. B. Todino did not demand arbitration of the withdrawal liability determination, and has not reported any covered work since September 2005. Maye Decl., ¶21.

## DISCUSSION

**Summary Judgment Standards:**

Pursuant to Federal Rule of Civil Procedure 56(c), courts may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). At this stage, the burden of proof is on the moving party to show that there is no genuine issue of material fact. *Gallo v. Prudential Residential Services, L.P.*, 22 F.3d 1219, 1223 (2d Cir.

3

1994)(citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975)). A genuine issue of fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). In making this determination, the court must view all of the evidence "in the light most favorable" to the non-movant. *Breland-Starling v. Disney Publishing Worldwide*, 166 F. Supp. 2d 826, 829 (S.D.N.Y. 2001)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In addition, the court must resolve all ambiguities and draw all inferences in favor of the party opposing the motion. *Ackerman v. National Financial Systems*, 81 F. Supp. 2d 434 (E.D.N.Y. 2000). Once the moving party has met its initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56; *see Liberty Lobby*, 477 U.S. at 250.

In opposing the motion, the nonmoving party may not rely upon "mere conclusory allegations, speculation, or conjecture." *Ackerman*, 81 F. Supp. 2d at 436 (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)). However, "if there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable." *Holt v. KMI Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996).

Even in cases where, as here, a non-moving party fails to oppose a motion for summary judgment, the Second Circuit has made clear that "the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. *Amaker v. Foley,* 274 F.3d 677, 681 (2d Cir. 2001). This means that if the evidence submitted is insufficient to meet the movant's burden of production, *see* Fed. R. Civ. P. 56(c), "summary judgment must be denied

4

even if no opposing evidentiary matter is presented." *Id.* (internal quotation marks omitted); *see also Giannullo v. City of New York.* 322 F.3d 139, 143 n. 5 (2d Cir. 2003) (noting that simply accepting as true all assertions in an unopposed motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"); *see also DeRienzo v. Metropolitan Transp. Auth., Metro North Commuter RR,* 237 Fed. Appx. 642, 2007 WL 1814277, *1 (2d Cir. June 20, 2007)(plaintiff's failure to comply with Local Rule regarding submission of Rule 56.1 counterstatement does not absolve party seeking summary judgment of burden of showing entitlement to judgment as matter of law).

**ERISA Withdrawal Liability:**

Withdrawal liability is statutory, arising when an employer stops contributing to a multiemployer pension plan designed to "relieve the funding burden on remaining employers" by having the withdrawing employer pay its proportionate share of the plan's unvested benefits. *ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.,* 846 F.2d 879, 881 (2d Cir. 1988). The determination of whether an employer has withdrawn and the collection of withdrawal liability payments are governed by a statutory framework set forth in ERISA. Pursuant to that framework, an employer withdraws from a plan when it permanently ceases to have operations covered by a CBA or permanently ceases to have an obligation to contribute to the plan. *See* 29 U.S.C. §1383(a). Disputes over withdrawal liability determinations are generally to be resolved by arbitration, but when no arbitration proceeding is initiated, as here, the plan sponsor may bring an action in state or federal court to collect the amounts due and owing. *See Levy Bros.,* 846 F.2d at 881.

The Trustees allege that Todino permanently ceased to have operations covered by the

CBA and permanently ceased to have an obligation to contribute to the plan in September 2005, thereby withdrawing from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C.§1383(a) and Article XI, Section 2 of the Trust Agreement. Rule 56.1 Stmt., ¶¶7 & 8. Todino has not opposed the motion for summary judgment, and has pointed to no evidence to the contrary, but I note that Todino asserted, in letters to the Trustees' counsel, that it had not permanently ceased those activities or obligations, but would resume them when it got new jobs. I find that no issue of material fact is raised in regard to whether Todino withdrew within the meaning of ERISA, and that the Trustees have provided sufficient evidence of that conclusion. Todino did not make contributions for two years prior to the notice of withdrawal and no reasonable trier of fact could find that the withdrawal was other than permanent.

As a result of Todino's withdrawal, it became liable to the Pension Fund for withdrawal liability. "When an employer withdraws from a multiemployer plan, the plan sponsor, that is, the entity maintaining the plan, must determine the amount of the employer's withdrawal liability, notify the employer of the amount and make a demand for payment." *Id*. at 881. Here, the Trustees did so. The Fund hired the Segal Company to calculate Todino's withdrawal liability, which was determined to be $245,036. The Fund notified Todino of this liability by letter dated June 11, 2007 and provided a schedule for withdrawal liability payments. *Id.* ¶¶7-9, Maye Decl., Exs. C & D. Pursuant to section 4219(c) of ERISA, 29 U.S.C.§1399(c), and, as provided in the Notice and Demand letter, Todino was required to make 41 monthly withdrawal liability payments of $6,449.01, with the final payment in the amount of $5,228.61. The first payment was due on or before July 1, 2007. *Id*. ¶¶10.

When Todino failed to make any payments, The Trustees sent a Notice of Default and

6

treated Todino's counsel's letters as a request for review pursuant to 29 U.S.C. §1399(b)(2)(A) and denied the request for review by letter dated August 16, 2007.  As noted earlier, Todino did not demand or initiate arbitration, a lapse that constitutes a waiver of its right to contest withdrawal liability assessment.  *See Bowers v. Transportacion Maritima Mexicana, S.A.,* 901 F.2d 258, 265 (2d Cir. 1990).  Where a defendant does not initiate arbitration, it "waives its right to arbitration and its right to assert any defenses in [an] action seeking withdrawal liability.  Accordingly, the withdrawal liability assessed against" the defendant becomes fixed.  *Vacca v. Bridge Chrysler Jeep Dodge, Inc.,* 2008 WL 4426875, *7 (E.D.N.Y. Sept. 4, 2008).  The amount of withdrawal liability also becomes fixed and must be paid.  *See Amalgamated Lithographers of America v. Unz & Co., Inc.,* 2009 WL 4016482, *6 (S.D.N.Y. Nov. 3, 2009) (citing 29 U.S.C. §1401(a)(1), (b)(1).

Based on the evidence submitted in support of the motion and the applicable law, I recommend a finding that Todino has waived any right to contest either the assessment or the amount of the withdrawal liability and the Trustees are entitled to summary judgment awarding the amount of withdrawal liability sought - $245,036.

**Damages:**

ERISA provides, in 29 U.S.C. §1451(b), that in any action to compel payment of withdrawal liability, "any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution" under 29 U.S.C. §1145.  Thus, in addition to the amount of withdrawal liability due and owing, the Fund is entitled to damages under 29 U.S.C. §1132(g)(2), consisting of interest, liquidated damages, costs and attorneys' fees.  *See Transportacion Maritima,* 901 F.2d at 265; *UNIT*E

*National Retirement Fund v. Veranda Mktg. Co.,* 2009 WL 2025163, *4 (S.D.N.Y. July 13, 2009). Courts have found the award of such damages to be mandatory. *UNITE,* 2009 WL 2025163 at *4; *see also Benson v. Brower's Moving & Storage, Inc.,* 726 F. Supp. 31, 36 (E.D.N.Y. 1989).

Interest: 29 U.S.C. §1132(g)(2) allows an award of interest at the rate provided by the relevant plan, as does the regulation applicable to withdrawal liability. *See Board of Trustees of UFCW Local 174 Pension Fund v. Jerry WWHS Co., Inc.,* 2009 WL 982424, *5 (E.D.N.Y. Apr. 10, 2009)(citing 29 C.F.R. §4219.32(b)). In the event of a default on payment of withdrawal liability, a plan sponsor may require not only immediate payment of the outstanding amount, but also accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. *See Daniello v. PML Furniture Group of NJ, Ltd.,* 2009 WL 4722650, * 5 (E.D.N.Y. Dec. 9, 2009)(citing 29 U.S.C. §1399(c)(5)).

For withdrawal obligations accruing on or after July 1, 2005, the Trust Agreement, as amended, provides for interest at the rate of 1½% a month, or 18% a year. *See* Maye Decl., ¶¶22&23, Ex. A. Thus, the Trustees seek interest at that rate from the date the first payment was missed on July 1, 2007, through April 1, 2010, the date that their motion for summary judgment was served, totaling $118,543.72. They also seek daily prejudgment interest in the amount of $120.84 from April 1, 2010 through, alternatively, the date of payment (Hock Decl. ¶7), or the date of judgment (Hock Decl., ¶9). I recommend that they be awarded $118,543.72 in accrued interest from July 1, 2007 through April 1, 2010, daily interest of $120.84 from April 1, 2010 through entry of judgment, and post-judgment interest pursuant to 28 U.S.C. §1961. *See Cement and Concrete Workers District Council Welfare Fund, Pension Fund, Annuity Fund, Education*

*and Training Fund and Other Funds v. Angel Construction Group, LLC,* 2010 WL 3463181, **7-8 (E.D.N.Y. June 15, 2010).

Liquidated Damages: Under 29 U.S.C.§1132(g)(2)(c) and the Trust Agreement, liquidated damages are to be awarded in an amount equal to the greater of interest on the unpaid contributions or twenty percent of unpaid contributions. Here, 20% of $245,036 is $49,007.20 and the total interest due is $118,543.72, plus $120.84 per day until entry of judgment and the Trustees opt for liquidated damages in the higher amount. I recommend that those damages be awarded. *See Trustees of the Local 807 Labor Management Health Fund v. Express Haulage Co.,* 2008 WL 4693533, *8 (E.D.N.Y. Oct. 23, 2008).

Attorneys Fees:

29 U.S.C. §1132(g)(2)(D) requires an award of reasonable attorneys fees and costs upon a determination that an employee benefit plan is entitled to judgment. In the Second Circuit, attorney's fees for federal claims are determined according to the "presumptively reasonable fee" approach, which is calculated by multiplying a reasonable hourly rate by a reasonable number of expended hours. *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 186-90 (2d Cir. 2008). The Court has "considerable discretion" in determining the presumptively reasonable fee; however, it should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Id.* at 190. Ultimately, the district court should be guided by what a "reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively would be willing to pay." *Id.* at 184.

The fee applicant bears the burden of establishing the reasonableness of the hourly rate

9

and the number of hours expended. *See New York State Teamsters Conference & Ret. Fund v. Erick Sanitation*, 1992 WL 246880, at *4 (N.D.N.Y. Sept.18, 1992). However, the district court may also rely upon its own knowledge of "the prevailing market rates in the relevant community for similar services for lawyers of reasonable comparable skill, experience and reputation. *Chambless v. Masters, Mates, and Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989) (internal citation and quotation marks omitted). Under the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee. *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal citations and quotation marks omitted). However, a litigant may be awarded higher out-of-district rates if she can prove that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result. *Id.* at 175. In determining the reasonableness of the hours expended, the Court must assess the value of the work product of the particular expenditures to the client's case. *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998). "If the court determines that certain claimed hours are excessive, redundant, or otherwise unnecessary, the court should exclude those hours in its calculation." *Id.*

Plaintiffs request $18,960.95 in attorneys fees, which represents 6.9 hours of partner time billed at a rate of $370 per hour, 59.1 hours of associate time billed at a rate of $275 per hour, and 13.4 hours of paralegal time billed at a rate of $90 per hour. Hock Decl. ¶13. They support their request with contemporaneous time records detailing the tasks their attorneys and paralegals completed for this case and the number of hours expended on each task. *See* Hock Decl., Ex. D. The amount sought reflects a 10% reduction offered to the client by the law firm. Based on my

review of similar cases in this district involving defaulting defendants liable for unpaid contributions to benefit funds, I find these rates to be on the higher end of fees awarded in ERISA cases in this district, but within the reasonable range. *See, e.g.,Gesualdi v. MBM Industries,* 2010 WL 3724348, *2 (E.D.N.Y. Sept. 15, 2010) (awarding rates of $390 for partners and $280 for an associate)(citations omitted); *Finkel v. Architcraft, Inc.,* 2010 WL 1257773, *4 (E.D.N.Y. Feb. 24, 2010)(awarding rates of $370 for partners, $275 for associates and $90 for paralegals)(citations omitted); *Trustees of the Local 813 I.B.T. Ins. Trust Fund v. Amanda Carting Corp.*, 2007 WL 4324019, *6 (E.D.N.Y. Dec. 7, 2007) (finding that prevailing rates in 2007 for ERISA work in this district ranged from $200-$375 per hour for partners, $200-$250 per hour for senior associates, and $75 per hour for paralegals.) (citations omitted).

I have also reviewed the time records submitted by plaintiffs and find that the time expended is generally reasonable for a case that went to summary judgment. Therefore, I respectfully recommend that the Court enter judgment against the defendant in the amount of $18,960.95 in attorney's fees.

Costs:

The Trustees also seek $881.16 in costs, consisting of a court filing fee of $350, $272 for service of process on Todino and service of subpoenas on third parties during discovery, and charges for postage, photocopies, computer research and document delivery services. They have provided copies of invoices for service of the Complaint and subpoenas, and the time records substantiate the other costs sought. Thus, I recommend an award of the amount sought - $881.16.

**OBJECTIONS**

A copy of this Report and Recommendation is being sent to counsel for the plaintiffs by electronic filing on the date below. Plaintiff's counsel is directed to serve a copy of this Report on the defendants by certified mail, return receipt requested, and to fax a copy of it if possible, and to electronically file proof of service with the court. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within 14 days. *See* 28 U.S.C. §636 (b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver,* 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
October 8, 2010

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge